IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| ELONZA JESSE TYLER, | ) |
| Plaintiff, | ) Case No. 1:06-cv-00090-BLW-MHW |
| v. | ) **REPORT AND RECOMMENDATION** |
| E. ROCHA, *et al.*, | ) |
| Defendants. | ) |

Pending before this Court are Plaintiff's Motion for Summary Judgment (Docket No. 40) and Defendants Mendoza-Powers, Hill, Castro and Davis' Motion for Summary Judgment (Docket No. 49). Having reviewed the Motions, Responses and relevant portions of the record, the Court concludes that oral argument is unnecessary to resolve the Motions. Accordingly, the Court enters the following Report and Recommendation.

## REPORT

### I.
### FACTUAL BACKGROUND

Plaintiff Elonza Jesse Tyler ("Plaintiff") was a prisoner at Avenal State Prison ("ASP") when the events at issue occurred. Plaintiff alleges that Defendants, including Chief Medical

**Report and Recommendation - Page 1**

Officer at ASP R. Davis, ASP Warden K. Mendoza-Powers, Associate Warden at ASP B.J. Hill, ASP correctional counselors E. Rocha[1] and Stiles, as well as the State of California and the California Department of Corrections, have acted with deliberate indifference to his medical needs in violation of the Eighth Amendment, retaliated against him for exercising his right to redress the state courts, and infringed upon his rights under the Americans with Disabilities Act (ADA).

In September 2003, while incarcerated at Folsom State Prison, Plaintiff injured his left knee while working in the kitchen. This knee injury is not at issue in this lawsuit, but is relevant to the medical transport issue that arose later. In March 2004, Plaintiff was transferred to Avenal State Prison. While at ASP, Plaintiff filed a petition for writ of habeas corpus in Kings County Superior Court and thereafter, in the Court of Appeals in the Fifth Appellate District regarding ASP prison officials' alleged failure to provide Plaintiff with orthopedic treatment. On February 10, 2005, the Appellate Court issued an order directing ASP to inform the court of the date Plaintiff was scheduled to have arthroscopic surgery as recommended by Dr. Smith.

On March 15, 2005, orthopedic specialist Dr. David G. Smith performed arthroscopic surgery on Plaintiff's left knee. Plaintiff received post-surgical treatment from Dr. Smith. On April 27, 2005, Plaintiff filed inmate appeal ASP-05-0907 claiming he was receiving poor post-surgical care and requesting immediate transfer to a medical facility. Plaintiff's appeal was granted at the first level by Dr. Smith. In May 2005, Dr. Smith examined Plaintiff and prescribed physical therapy. Since ASP did not have a physical therapy program, it was recommended Plaintiff be transferred to another institution. Plaintiff apparently underwent physical therapy at Corcoran State Prison Hospital in May 2005 but remained in custody at ASP. On August 25,

---

[1] E. Rocha is now known by married name, E. Castro.

2006, Plaintiff's inmate appeal ASP 05-0907 was denied by Defendant Davis, Chief Medical Officer, because a physical therapy program had become available at ASP. It was also denied at the director's level.

In June 2005, Reed Jackman was hired to work as a physical therapist at ASP. He treated Plaintiff from June 17, 2005 to July 8, 2005. Jackman found Plaintiff to be unreceptive to his suggestions on how to properly rehabilitate his knee. Plaintiff expressed disappointment that he was not receiving the same level of care that a professional athlete would receive. After only a few visits, Plaintiff requested that his physical therapy treatment be discontinued.[2]

Plaintiff filed inmate appeal ASP-M-05-01654 on August 22, 2005 claiming he was not receiving proper physical therapy and seeking an appointment with an orthopedic physician. This appeal was partially granted by Defendant Davis on September 13, 2005 and it was ordered that Plaintiff be referred to an orthopedic specialist. This appeal was also partially granted at the director's level. Plaintiff was referred to an orthopedist to have his progress further evaluated.

On August 29, 2005, Plaintiff received an endorsement to be transferred to California Medical Facility ("CMF") from J. Short. The next day, Plaintiff filed inmate appeal ASP-05-02097 requesting a "van with a wheelchair lift" to transport him to CMF. This appeal was partially granted by Defendant Castro. Defendant Castro ordered that Plaintiff be transported via regular van, noting that he was an intermittent wheelchair user who had agreed he was able to ride in a regular van and had done so on previous occasions. On October 17, 2005, Plaintiff was to be transported from ASP to CMF. A bus arrived to transport Plaintiff but he was unable to

---

[2] Plaintiff has filed a lawsuit against Defendants Davis and Mendoza-Powers, as well as Jackman and Dr. Smith, alleging deliberate indifference to his medical condition for poor medical treatment while at ASP in *Tyler v. Davis*, 1:06-cv-00092-AWI (E.D. Cal. 2006).

climb the steps into the bus and consequently, was unable to be transported to CMF. On November 9, 2005, Plaintiff's inmate appeal ASP-M-05-02097 was also granted in part by Defendant Mendoza-Powers. The decision directed Plaintiff to be transported expeditiously to CMF once CMF notified ASP of bed availability.

On or about December 13, 2005, Plaintiff was transferred from ASP to CMF via van. Once he arrived at CMF, Plaintiff was seen promptly by a nurse practitioner and within ten days, was examined by Dr. Mehta who prescribed physical rehabilitation and scheduled a follow-up examination. Plaintiff was also referred to an orthopedic specialist, prescribed medication and shortly thereafter, began physical therapy. Plaintiff has sued the medical staff of CMF, including Dr. Mehta, alleging deliberate indifference to his medical condition in the case *Tyler v. Andreasen*, 2:06-cv-01883-MCE (E.D. Cal. 2006).

## II.
## PROCEDURAL BACKGROUND

On January 27, 2006, Plaintiff filed this present action against J. Woodford, E. Castro, B.J. Hill, Stiles, and K. Mendoza seeking general damages "for defendants' deliberate indifference to the serious medical needs of Plaintiff and intentional discrimination in violation of the Americans with Disability and Rehabilitation Act . . ." The Court dismissed the Complaint, with leave to amend, on November 20, 2006 finding that Plaintiff could not bring a claim for ADA relief against the defendants, all of whom were individuals and also found that he had not alleged that he was "denied" a benefit. In regard to his Eighth Amendment claim, the Court found that Plaintiff's alleged claims were not cognizable because there was no indication that defendants had any control over the timing of Plaintiff's transfer.

Plaintiff filed an Amended Complaint on December 15, 2006, against the Department of

**Report and Recommendation - Page 4**

Corrections, the State of California, Chief Medical Officer at ASP R. Davis, ASP Warden K. Mendoza-Powers, Associate Warden at ASP B.J Hill, ASP correctional counselors E. Castro and Stiles and Doe Defendants. In his Amended Complaint, Plaintiff states that the Defendants willfully and knowingly disregarded an excessive risk to his health and safety by intentionally retaliating against plaintiff for exercising his right to redress the state courts with grievances and for using the appeal system to file complaints against them. He also states the Defendants intentionally retaliated against him in violation of Title II of the Americans with Disabilities and Rehabilitation Act and "motion will be made on the violation of Plaintiff's civil rights, of the Fifth, Eighth and Fourteenth Amendments of the United States Constitution, infringement of Plaintiff's ADA rights and violation of the Civil Rights of Institutionalized Persons Act, in that prisoner has a right to be free of cruel and unusual punishment, without due process." The crux of Plaintiff's Amended Complaint is that he was denied the reasonable ADA accommodation of a van transport to CMF which ultimately delayed his transfer to CMF and caused delay in receiving medical treatment.

On November 21, 2007, the Court directed the United States Marshal to serve process on the following defendants: Davis, Mendoza-Powers, Hill, Castro, and Stiles. Defendants Davis, Mendoza-Powers, Hill, and Castro appeared. On September 23, 2008, Defendant Stiles was dismissed from the action because he had not been served. Plaintiff filed a motion for summary judgment on September 29, 2008. On October 24, 2008, Plaintiff filed his Second Amended Complaint. The Second Amended Complaint is a reproduction of the Amended Complaint with

certain portions omitted.[3]  Defendants Castro, Hill, Davis and Mendoza-Powers filed a cross-motion for summary judgment on November 4, 2008.  These motions are now ripe for review.

### III.
### SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . . ."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources."  *Id*. at 327.  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986).  Material facts are those which may affect the outcome of the case.  See id. at 248.

The evidence must be viewed in the light most favorable to the non-moving party, *id.* at 255, and the Court must not make credibility findings.  *Id.*  Direct testimony of the non-movant must be believed, however implausible.  *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir.

---

[3] Defendants have requested that the motions for summary judgment be considered in reference to the Second Amended Complaint since the omitted portions do not change the legal claims and factual allegations against Defendants.  The Court agrees and will considered the pending motions for summary judgment in light of the Second Amended Complaint.

**Report and Recommendation - Page 6**

1999). On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988). In addition, the Court must be "guided by the substantive evidentiary standards that apply to the case." *Liberty Lobby*, 477 U.S. at 255.

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson,* 212 F.3d 528, 532 (9th Cir. 2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor. *Id.* at 256-57. The non-moving party must go beyond the pleadings and show by "affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine issue of material fact exists. *Celotex,* 477 U.S. at 324.

## IV.
## MOTIONS FOR SUMMARY JUDGMENT

### A. ADA Title II Claims

#### 1. Defendants Castro, Davis, Hill, and Mendoza-Powers

Title II of the ADA applies to a "qualified individual with a disability who with or without reasonable modifications to rules, policies, or practices, . . . meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2). The Supreme Court has held that the plain language of Title II of the ADA extends to prison inmates who are deprived of the benefits of participation in prison programs, services, or activities because of a physical disability. *See Pennsylvania Dept. of*

Report and Recommendation - Page 7

*Corrections v. Yeskey*, 524 U.S. 206, 211, 118 S. Ct. 1952, 1955 (1998). The term "public entity" includes "any department, agency, special purpose district, or other instrumentality of a State or States or local government." *Id*., 118 S. Ct. at 1954-55. Title II of the ADA has recently been upheld as a valid abrogation of state sovereignty "insofar as Title II creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment." *United States v. Georgia*, 126 S.Ct. 877, 882 (2006) (emphasis in original).

Under Title II of the ADA, plaintiffs may not sue individual defendants in their individual capacities, but must instead sue the state or state entities. See Lollar v. Baker, 196 F.3d 603, 610 (5th Cir. 1999) (citing Alsbrook v. City of Maumelle, 184 F.3d 999, 1010-11 (8th Cir.1999) (the ADA's comprehensive remedial scheme bars the plaintiff's claims against the commissioners in their individual capacities); Baird v. Rose, 192 F.3d 462, 471 (4th Cir. 1999) (Title II of the ADA does not recognize a cause of action for discrimination by private individuals, only public entities); compare Miranda B. v. Kitzhaber, 328 F.3d 1181, 1188-87 (9th Cir. 2003) (holding that Title II's statutory language does not prohibit a plaintiff from requesting injunctive action against state officials in their official capacities).

The Court noted in its November 20, 2006 Order dismissing the Complaint that Plaintiff's ADA claim was not cognizable against the Defendants, all of whom were individuals. It was also noted that Plaintiff did not allege he was denied a benefit. Plaintiff's Amended Complaint, and Second Amended Complaint, do not cure these deficiencies. Plaintiff cannot bring a Title II ADA claim against Defendants Castro, Davis, Hill and Mendoza-Powers. Additionally, even if Plaintiff were able to bring an ADA claim against these individuals, his

claim would fail for the reasons stated below.

### 2. State of California and California Department of Corrections

In Plaintiff's Amended Complaint and Second Amended Complaint, he lists the State of California and the California Department of Corrections and Rehabilitation ("CDCR") as Defendants. These Defendants were never served. Nonetheless, the Court finds that the claims against them fail.

Under Title II of the ADA, states and state entities may be sued. In order to proceed with an ADA claim, Plaintiff must show (1) that he has a disability; (2) that he is otherwise qualified to participate in or receive a public entity's services, programs or activities; (3) that he was denied the benefits of the services, programs or activities or was otherwise discriminated against by the public entity; and (4) that such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability. *Weinriech v. Los Angeles County Metropolitan Transportation Authority*, 114 F.3d 976, 978 (9th Cir. 1997).

As noted by the Court in its November 20, 2006 Order, Plaintiff does not allege he was denied a benefit. Instead, he alleges that the benefit or service, *i.e.,* being transported to CMF in a van with a wheelchair lift, was delayed. Notably, he does not argue that this benefit or service was delayed *because of* his disability. Rather, he argues that the delay was done in retaliation for exercising his First Amendment rights and with deliberate indifference to his serious medical needs. Plaintiff does not allege, nor present evidence, that the delay in transport to CMF occurred *by reason of* his disability and therefore does not allege an actionable ADA claim. He complains that he did not receive the medical treatment he deserved, that is, he was denied a service needed *for* his disability. *See Bryant v. Madigan*, 84 F.3d 246, 248 (7th Cir. 1996) (holding that the

ADA does not create a remedy for medical malpractice). *See also Rosado v. Alameida*, 2005 WL 892120, *3 (S.D. Cal. 2005) (citing *Bryant* with approval and holding that the plaintiff failed to state an actionable ADA claim because the benefits and services he wished to receive were *for* his disability). Accordingly, his ADA claim should be dismissed.

**B.   Retaliation Claim**

   **1.   Defendants Castro, Davis, Hill, and Mendoza-Powers**

Defendants contend that Plaintiff does not have a retaliation claim against them because they did not take adverse action against him and had no retaliatory intent. Plaintiff appears to allege that Defendants acted in retaliation by withholding and delaying his reasonable ADA accommodation of a van transfer to CMF, by failing to assure that the transfer order was complied with, by transferring Plaintiff to CMF without medical instructions as to his medical condition, and by disregarding an excessive risk to his health.

Prison officials may be sued under § 1983 for retaliating against a prisoner for exercising his or her First Amendment rights. *Pratt v. Rowland*, 65 F.3d 802, 806 n. 4 (9th Cir. 1995). A retaliation claim must show: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005). A "chilling effect on First Amendment rights" is enough to state an injury. *Gomez v. Vernon*, 255 F.3d 1118, 1127 (9th Cir. 2001).

Defendants were not responsible for arranging, scheduling or dispatching a vehicle for Plaintiff's transfer to CMF. *See* Defs.' Ex. F, Mendoza-Powers Decl., ¶¶ 3-8; Defs.' Ex. G, Hill

Report and Recommendation - Page 10

Decl., ¶¶ 3-8; Defs.' H, Davis Decl., ¶¶ 3-7; and Defs.' Ex. I, Castro Decl., ¶¶ 4-8. Nor were they responsible for arranging the transfer of medical records and files from ASP to CMF. *Id*. Defendants were not responsible for the adverse action Plaintiff complains of and did not take any adverse action against him. Plaintiff has not set forth any evidence to the contrary. Rather, the evidence shows that Defendants partially granted Plaintiff's inmate appeals at various levels. *Id*., Pl.'s Ex. 10.[4]

Additionally, these Defendants all attested to the fact that they were unaware or could not recall any of Plaintiff's inmate appeals and lawsuits. *Id*. Defendants did not take any adverse action against Plaintiff nor is there any evidence of retaliatory motive, and accordingly, this claim against them should be dismissed. *See Giraldes v. Roche*, 2007 WL 4591451, *5 (E.D. Cal. Dec. 28, 2007) (dismissing retaliation claim where plaintiff could not establish that defendants took adverse action against him).

### 2. State of California and California Department of Corrections

In general, the Eleventh Amendment prohibits litigants from bringing suit against states, state agencies, and state officials acting in their official capacity in federal court. *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc*., 506 U.S. 139, 144 (1993). The "Eleventh Amendment's jurisdictional bar applies 'regardless of the nature of the relief sought.'" *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Accordingly, "the Eleventh Amendment immunity that [state entities] may claim as dependent instrumentalities of [the state]

---

[4] Defendant Davis did deny one appeal requesting a transfer because physical therapy had become available at ASP. "Liability under § 1983 must be based on active unconstitutional behavior and cannot be based upon a 'mere failure to act.'" *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). Rather, where defendants' "only roles in [a civil rights] action involve the denial of administrative grievances or the failure to act. . . they cannot be liable under § 1983."

shields them from claims for both monetary and non-monetary relief." *Rounds v. Oregon State Bd. of Higher Education*, 166 F.3d 1032, 1036 (9th Cir. 1999).

Plaintiff cannot sue the State of California and the California Department of Corrections in federal court absent consent from the State. The Eleventh Amendment prohibits federal courts from hearing complaints brought against an unconsenting state by its own citizens or by citizens of a different state. See Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 100 (1984). Plaintiff's claims brought under § 1983 against the State of California and the California Department of Corrections should be dismissed.

**C.  Eighth Amendment Deliberate Indifference Claim**

    **1.  Defendants Castro, Davis, Hill, and Mendoza-Powers**

Defendants contend that Plaintiff does not have an Eighth Amendment claim because they were not responsible for his alleged deprivation, Plaintiff's transfer was not a "sufficiently serious" deprivation, and Defendants did not demonstrate a knowing and intentional disregard of an excessive risk to Plaintiff's health or safety. Plaintiff submits that Defendants acted with deliberate indifference by willfully, intentionally, and knowingly disregarding an excessive risk to his health and safety by withholding an ADA transfer accommodation and this deliberate indifference to his serious medical condition posed an unreasonable risk of future harm to his health.

To state an Eighth Amendment claim regarding prison medical care, Plaintiff must show that prison officials' "acts or omissions [were] sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). "Because society does not expect that prisoners will have unqualified access to health care, deliberate

Report and Recommendation - Page 12

indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

The Ninth Circuit has defined a "serious medical need" in the following ways:

> failure to treat a prisoner's condition [that] could result in further significant injury or the unnecessary and wanton infliction of pain[;] . . . [t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.

*McGuckin v. Smith,* 974 F.2d 1050, 1059-60 (9th Cir. 1992), *overruled on other grounds*, *WMX Technologies, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (quotation omitted).

Deliberate indifference exists when an official knows of and disregards a serious medical condition or when an official is "aware of facts from which the inference could be drawn that a substantial risk of harm exists," and actually draws such an inference. *Farmer v. Brennan,* 511 U.S. 825, 837 (1994). Deliberate indifference can be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976) (footnotes omitted).

Mere indifference, medical malpractice, or negligence will not support a cause of action under the Eighth Amendment. Broughton v. Cutter Labs., 622 F.2d 458, 460 (9th Cir. 1980). A mere delay in treatment does not constitute a violation of the Eighth Amendment, unless the delay causes serious harm. Wood v. Housewright, 900 F.2d 1332, 1335 (9th Cir. 1990). The Ninth Circuit has clarified that if medical personnel have been "consistently responsive to [the inmate's] medical needs," and there has been no showing that the medical personnel had "subjective knowledge and conscious disregard of a substantial risk of serious injury," summary

judgment is proper. Toguchi v. Chung, 391 F.3d 1051, 1061 (9th Cir. 2004).

Plaintiff filed several inmate appeals following his knee surgery. The first, ASP-05-0907, requested transfer to a medical facility and was granted in part by Dr. Smith at the first level on May 14, 2005. Dr. Smith stated that he would request to transfer Plaintiff to a facility which had physical therapy available. Subsequently, Plaintiff received physical therapy from Jackman at ASP. At the second level of response, Defendant Davis denied Plaintiff's inmate appeal on August 26, 2005, noting that he been seen by a physical therapist, had a wheelchair accommodation and there was no need to transfer him to another medical facility. On December 15, 2005, the director's level also denied Plaintiff's inmate appeal, noting that Plaintiff had been seen by a physical therapist. *See* Pl.'s Exs. 7, U (11).

Plaintiff's second inmate appeal filed on August 22, 2005, ASP-M-05-01654, was granted in part at the first level of response by Douglass. He submitted a request for a second opinion by a physical therapist and also ordered a follow-up appointment with a orthopedic surgeon. At the second level of response, Plaintiff's appeal was again granted in part by Defendant Davis on September 13, 2005. Davis referred Plaintiff back to an orthopedist to further evaluate his progress. Finally, at the director's level, Grannis granted Plaintiff's appeal in part, ordering that ASP medical staff was to ensure Plaintiff was seen by an orthopedist as soon as possible. *See* Pl.'s Exs. 10, A.

A third inmate appeal, ASP-M-05-02097, filed by Plaintiff on August 30, 2005, was partially granted by Defendant Castro at the first level of response. She ordered that Plaintiff be provided a reasonable accommodation for his transportation needs. At the second level of response, Defendant Mendoza-Powers granted the appeal to be transferred to CMF expeditiously

once CMF advised of bed availability. At the director's level of response, the appeal was denied by Grannis on December 29, 2005 as Plaintiff had already been transferred to CMF at that point. *See* Pl.'s Exs. 13, 14.

Defendants were not responsible for arranging or scheduling the vehicle for Plaintiff's transfer to CMF. Although they were the ones who ordered that Plaintiff be transferred to CMF, they were not in control over the means by which he got there. As noted by the Court previously in its November 20, 2006 Order, there is no indication that Defendants had control over the timing of this transfer. Plaintiff offers no evidence to the contrary.

Deliberate indifference is a high legal standard. *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). There are no facts that suggest any of these Defendants had subjective knowledge, or consciously disregarded, an excessive risk to Plaintiff's health and safety. These Defendants granted Plaintiff's inmate appeals to make sure that he was receiving the medical care he needed. The only denial of any appeal from a named Defendant came from Davis. That denial was based on the fact that physical therapy had become available at ASP and Plaintiff had seen the physical therapist. Although Plaintiff chose to discontinue his physical therapy with Jackman, this does not show deliberate indifference on the part of Defendant Davis, nor any of the other Defendants.

Additionally, Plaintiff argues that the Defendants' failure to both "follow through" after granting his appeal and establish adequate procedures for making transportation requirements constituted deliberate indifference. These arguments, which are unsupported by evidence, do not amount to Defendants acting with deliberate indifference. Mere negligence in treating a medical condition does not violate a prisoner's Eighth Amendment rights. Further, a mere delay in

**Report and Recommendation - Page 15**

treatment does not constitute a violation of the Eighth Amendment, unless the delay causes serious harm. *Wood v. Housewright*, 900 F.2d 1332 (9th Cir. 1990). Defendants did not take any action against Plaintiff that could be construed as a deliberate indifference to his medical needs. They should be entitled to summary judgment.

### 2. State of California and California Department of Corrections

As discussed above in reference to Plaintiff's retaliation claim, Plaintiff's Eighth Amendment claim brought under § 1983 is barred by the Eleventh Amendment. There is no evidence that State of California and the California Department of Corrections have consented to being sued in federal court.

### D. Other Claims

In his complaint, Plaintiff states that his Fifth and Fourteenth Amendment rights were also violated. The Supreme Court has instructed the federal courts that, whenever possible, they should analyze constitutional claims using "an explicit textual source of constitutional protection," such as the Eighth Amendment, rather than using "the more generalized notion of 'substantive due process.'" *Graham v. Connor*, 490 U.S. 386, 395 (1989). Under the *Graham* principle, Plaintiff's claim was most appropriately construed as an Eighth Amendment claim rather than a due process claim.

## RECOMMENDATION

Based upon the foregoing, the Court being otherwise fully advised in the premises, the Court **hereby RECOMMENDS that:**

1) Plaintiff's Motion for Summary Judgment (Docket No. 40) be **DENIED**;

2) Defendants Mendoza-Powers, Hill, Davis and Castor's Motion for Summary

Judgment (Docket No. 49) be **GRANTED**; and

        3)     Judgment be entered in favor of Defendants and the case be dismissed with prejudice.

Written objections to this Report and Recommendation must be filed within thirty (30) days pursuant to 28 U.S.C. § 636(b)(1). The document should be captioned "Objections to Magistrate Judge's Report and Recommendation." The parties are advised that as result of failing to do so, that party may waive the right to raise factual and/or legal objections to the United States Court of Appeals for the Ninth Circuit.

DATED: March 13, 2009

/s/ Mikel H. Williams

Honorable Mikel H. Williams
United States Magistrate Judge